Nos. 24-4354(L), 24-4356

─────────────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KULBIR KAUR;
HARMANPREET SINGH,

Defendants-Appellants

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

───────────────

BRIEF FOR THE UNITED STATES AS APPELLEE

───────────────

JESSICA D. ABER
  United States Attorney

AVISHEK PANTH
  Assistant United States Attorney
  United States Attorney's Office
  Eastern District of Virginia
  919 East Main Street, Suite 1900
  Richmond, VA  23219
  (804) 874-0932

KRISTEN CLARKE
  Assistant Attorney General

ERIN H. FLYNN
TERESA KWONG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-4757

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF JURISDICTION ..................................................1

STATEMENT OF THE ISSUES.....................................................1

STATEMENT OF THE CASE .......................................................2

    A.    Factual Background .............................................. 2

    B.    Procedural Background........................................8

SUMMARY OF ARGUMENT ...................................................13

ARGUMENT

    I.    The district court did not err in admitting statements from the visa extension application that Kaur prepared. ..........................................15

        A.    Standard of review .....................................15

        B.    Singh has no valid Confrontation Clause claim..........15

            1.    The Confrontation Clause applies only to testimonial hearsay...........................................16

            2.    Kaur's statements were not hearsay. ................16

            3.    Kaur's statements were not testimonial. ...........20

            4.    Any error in admitting Kaur's statements was harmless......................................24

    II.    The district court did not abuse its discretion when it denied Singh's motion to sever his trial. ................29

**TABLE OF CONTENTS (continued):**                    **PAGE**

    A.    Standard of review .......................................................29

    B.    Singh failed to show clear prejudice
         warranting a separate trial. .......................................29

III.   The district court did not err in excluding
    defendants' unsubstantiated and irrelevant
    allegations of abuse..............................................32

    A.    Standard of review .......................................................32

    B.    Defendants' evidentiary arguments lack merit...........33

        1.    The district court properly excluded
            defendants' allegations. ......................................34

            a.    Defendants' allegations lack
                probative value............................................36

            b.    Any probative value of defendants'
                allegations was substantially
                outweighed by the risk of unfair
                prejudice, confusion, and undue
                delay. ..........................................................40

        2.    The district court properly limited
            defendants' cross-examination. ...........................42

        3.    The overwhelming evidence of defendants'
            guilt rendered any error harmless. ....................44

CONCLUSION .........................................................................47

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

**TABLE OF CONTENTS (continued):**

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **PAGE**

*Anderson v. United States*, 417 U.S. 211 (1974) .................................... 16

*Bruton v. United States*, 391 U.S. 123 (1968) ................................... 9, 30

*Crawford v. Washington*, 541 U.S. 36 (2004) ................................ *passim*

*Davis v. Washington*, 547 U.S. 813 (2006) ............................................. 16

*Delaware v. Fensterer*, 474 U.S. 15 (1985) (per curiam)........................ 42

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ...................................... 42

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ........................... 23

*Michigan v. Bryant*, 562 U.S. 344 (2011)........................................... 21-22

*Smith v. Arizona*, 602 U.S. 779 (2024)........................................ 13, 16-17

*Tennessee v. Street*, 471 U.S. 409 (1985) ................................................ 17

*United States v. Abel*, 469 U.S. 45 (1984) ....................................... 35, 37

*United States v. Arce*, 49 F.4th 382 (4th Cir. 2022)...................... *passim*

*United States v. Ayala*, 601 F.3d 256 (4th Cir. 2010) ...................... 18, 42

*United States v. Benson*, 957 F.3d 218 (4th Cir. 2020).......................... 21

*United States v. Cabrera-Beltran*,
    660 F.3d 742 (4th Cir. 2011) ............................................. 14, 23, 33

*United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014) ....................... 36

*United States v. Davis*, 726 F.3d 434 (3d Cir. 2013)................................ 36

**CASES (continued):**                                                    **PAGE**

*United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012) ............. 14, 29, 32

*United States v. Farmer*, 923 F.2d 1557 (11th Cir. 1991) ..................... 35

*United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986) ..................... 40

*United States v. Hall*, 858 F.3d 254 (4th Cir. 2017) ........................ 34, 36

*United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993) ........................... 40

*United States v. Hart*, 91 F.4th 732 (4th Cir. 2024) ........................ 37, 39

*United States v. Hill*, 322 F.3d 301 (4th Cir. 2003) ................................. 41

*United States v. Holmes*, 406 F.3d 337 (5th Cir. 2005) ..................... 18-19

*United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010) ........................ 33

*United States v. Jones*, 716 F.3d 851 (4th Cir. 2013) ....................... 21, 23

*United States v. Kiza*, 855 F.3d 596 (4th Cir. 2017) ................................ 42

*United States v. Landersman*, 886 F.3d 393 (4th Cir. 2018) ............ 32-33

*United States v. Leftenant*, 341 F.3d 338 (4th Cir. 2003) ...................... 37

*United States v. Lightly*, 616 F.3d 321 (4th Cir. 2010) .......................... 30

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) .......................... 22

*United States v. Moriello*, 980 F.3d 924 (4th Cir. 2020) ....................... 45

*United States v. Myers*, 589 F.3d 117 (4th Cir. 2009) ........................... 35

*United States v. Najjar*, 300 F.3d 466 (4th Cir. 2002) ........................... 32

**CASES (continued):** **PAGE**

*United States v. Olano*, 507 U.S. 725 (1993) ................................... 33, 45

*United States v. Reavis*, 48 F.3d 763 (4th Cir. 1995)...................... 29, 31

*United States v. Reed*, 780 F.3d 260 (4th Cir. 2015) .............................24

*United States v. Singh*, 518 F.3d 236 (4th Cir. 2008)............................32

*United States v. Smith*, 117 F.4th 584 (4th Cir. 2024)...........................15

*United States v. Smith*, 451 F.3d 209 (4th Cir. 2006) ...........................42

*United States v. Stewart*, 433 F.3d 273 (7th Cir. 2006).........................19

*United States v. Taylor*, 417 F.3d 1176 (11th Cir. 2005).................. 35, 39

*United States v. Udeozor*, 515 F.3d 260 (4th Cir. 2008) ........ 10, 21, 23-24

*United States v. Williams*, 632 F.3d 129 (4th Cir. 2011).......................33

*United States v. Wills*, 346 F.3d 476 (4th Cir. 2003) ...........................19

*Zafiro v. United States*, 506 U.S. 534 (1993) .............................. 29, 30, 32

**CONSTITUTION:**

U.S. Const. Amend. VI .........................................................................16

**STATUTES:**

8 U.S.C. 1324..........................................................................................1

18 U.S.C. 2..............................................................................................8

18 U.S.C. 1589...................................................................................1, 8

**STATUTES (continued):** **PAGE**

18 U.S.C. 1592 ................................................................................8

18 U.S.C. 1594(a) .............................................................................8

18 U.S.C. 1594(b) ........................................................................1, 8

18 U.S.C. 1597 ................................................................................8

18 U.S.C. 3231 ................................................................................1

28 U.S.C. 1291 ................................................................................1

**RULES:**

Fed. R. Crim. P. 14 ....................................................................29-30

Fed. R. Evid. 403 ......................................................................34, 40

Fed. R. Evid. 404(b) ....................................................................9, 35

Fed. R. Evid. 404(b)(1) ...................................................................34

Fed. R. Evid. 404(b)(2) ...................................................................34

Fed. R. Evid. 608(b) .......................................................................35

Fed. R. Evid. 801(c) .......................................................................16

Fed. R. Evid. 801(d)(2)(E)........................................................9-10, 19, 31

## STATEMENT OF JURISDICTION

This is an appeal from a district court's final judgment in a criminal case. The district court had jurisdiction under 18 U.S.C. 3231 and entered final judgment against defendants-appellants Kulbir Kaur and Harmanpreet Singh (collectively, defendants) on June 27, 2024. JA1524-1537.[1] On March 20, 2024, Singh filed a timely notice of appeal. JA1522-1523; *see also* JA31 (docket entry no. 268). Kaur filed a timely notice of appeal on June 28, 2024. JA1538-1539. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

After an eight-day trial, defendants were convicted on five counts related to a conspiracy to commit forced labor and harboring an alien for financial gain, in violation of 18 U.S.C. 1589 and 1594(b) and 8 U.S.C. 1324. Defendants challenge their convictions based on three alleged errors:

---

[1] "JA__" refers to the page number of the appendix that defendants filed with their opening brief. "SA__" refers to the page number of the Supplemental Appendix, filed by the United States along with this brief. "Gov't Ex. __" refers to the government's exhibits admitted at trial. "Br. __" refers to page numbers in defendants' opening brief.

1.  Whether the admission of defendant Kaur's non-hearsay statements complied with the Confrontation Clause.

2.  Whether the district court abused its discretion by not granting defendant Singh's motion to sever his trial.

3.  Whether the district court erred in excluding defendants' unsubstantiated and irrelevant allegations of misconduct by the victim.

## STATEMENT OF THE CASE

### A.    Factual Background

In 2018, defendants Kulbir Kaur and Harmanpreet Singh visited Singh's relatives in India.  JA646-647.  On that trip, defendants induced the victim, B.S., Singh's then 17-year-old cousin, to return to the United States with them.  JA638, JA640, JA645-656.  Defendants falsely promised B.S. and his family that he could attend school in the United States.  JA645-656.  Defendants told B.S. that they would help him enroll in a school and then he would be able switch from a B-1/B-2 non-immigration visa ("tourist visa") to a student visa that would allow him to stay in the United States to study.  JA368, JA370, JA646, JA648-650, JA656, JA1171-1173.

- 2 -

Based on those assurances, B.S.'s father allowed B.S. to travel with defendants to the United States in February 2018. JA365-368, JA660-664. B.S. had a round-trip ticket to return to India a month later in case he did not enroll in a school. JA655-656. Once they landed in Washington, D.C., Kaur seized B.S.'s passport at the airport, stating that she needed it for enrolling him in school and did not want him to lose it. JA664.

B.S. lived with defendants in Virginia from February 2018 until May 2021. JA639, JA665, JA671, JA967. During this time, defendants never enrolled B.S. in school, yet they "insisted" that B.S. lie to his family that he was attending school. JA681-682. Defendants required B.S. to work at their gasoline and convenience store, called Lovely Market, while Kaur purportedly looked for a school for him. JA668-669, JA671-672.

B.S. started working at defendants' store on his first full day in the United States even though B.S. told Singh that he did not want to work. JA668-669. From then on, B.S. worked at Lovely Market generally from 7 a.m. to 11 p.m. or later every day—cleaning, manning the grill, serving as cashier, stocking shelves, and managing store

records—and had to sleep overnight in the back of the store whenever defendants did not bring him home.  JA671, JA686, JA697, JA761-794, JA800, JA811-814, JA823-828, JA839, JA947; *see also* JA269, JA515, JA579-580, JA1138-1139, JA1312, JA1331, JA1335.  Only twice did he take a half-day off when he was too sick to work.  JA913, JA916-917; *see also* JA773-774.  Defendants did not pay B.S. regular wages for his work.  JA795, JA888-JA889, JA934; *see also* JA453, JA478, JA1207-1208.  Singh even took B.S.'s tips from customers and threatened B.S. with a gun when he discovered that B.S. told customers not to give him tips because he was not allowed to keep them.  JA925-932; *see also* JA884-885.

Before his tourist visa was set to expire in August 2018, B.S. told defendants that he wanted to return to India because he came to the United States to study and defendants had not enrolled him in a school.  JA685-686.  Defendants, however, convinced him to apply to extend his tourist visa for another six months since the new school year was about to start.  JA688-694.  Kaur retained and paid for an immigration lawyer to help prepare the application.  JA1488-1492.  B.S. signed the application, but the application listed Kaur's contact information as

- 4 -

B.S.'s, identified Kaur as B.S.'s translator even though B.S. knew English, and indicated that B.S. had not been working in the United States. JA1500, JA1505-1506; *see also* JA692-694 (Gov't Ex. 11). In support of the extension application, Kaur also drafted and signed a notarized affidavit, stating that B.S. wanted to stay in the United States to travel, gain knowledge and experiences, and celebrate Christmas with her family. JA1516; *see also* JA692-696. Kaur also prepared an almost identical affidavit for B.S. JA1515.

Defendants subjected B.S. to physical abuse, threats, and coercion as part of their scheme to force him to continue working at Lovely Market. JA679-685. When B.S. objected to working or asserted that he wanted to attend school or go home to India, Singh would hit or kick him or pull his hair. JA679-680, JA683-684, JA702, JA725. Singh also twice in a rage brandished a gun at B.S. JA884-885, JA918-920, JA927-933; *see also* JA957. Both defendants threatened B.S. with physical abuse and other serious harms to compel his continued labor and deter him from running away. JA683-684, JA701-702, JA717-719. For instance, when B.S.'s passport was about to expire in 2019 and B.S. told defendants that he wanted to return to India, Singh hit B.S. and told

him that he could "kill [B.S.] right now [and] no one would care about it." JA702, JA717. Kaur also threatened to report his illegal status and told him that if he went to law enforcement, he would be put in jail. JA719-720. B.S. continued working at Lovely Market because he was "scared" of going to jail. JA717-719; *see also* JA703-705. And when B.S. worked at the store, defendants monitored B.S.'s actions and what he said to customers through the store's surveillance camera. JA889-891; *see also* JA718, JA796, JA884-885.

Defendants even forced B.S. to marry Kaur—when he was 18 years old and Kaur was 38 years old—to further their scheme. JA726-746. Singh claimed that he and Kaur would divorce so that B.S. could marry her and then be able to attend school. JA726-728. B.S. objected, but Singh told him that Kaur will arrange the marriage and B.S. needed to sign the papers or else Singh would "beat" him. JA728-729, JA732, JA738-739. Again, B.S. was scared to seek help from law enforcement. JA732. As part of their ruse, Kaur asked B.S. to obtain certain "property papers" from his family showing their assets in India in order to enroll him in school, and he gave them to her. JA740-747. Defendants left for India together soon after B.S. and Kaur's marriage.

- 6 -

JA747.  Before leaving, Kaur threatened B.S. that, if he tried to leave, she would report him to the police for spousal abuse; she also threatened that, as his wife, she would take his parents' assets while she was in India.  JA745-746.

In May 2021, B.S. finally confided in his friend Kusha that he had not been attending school, that defendants forced him to work at Lovely Market, and that defendants kept his travel "documents."  JA952-953. His friend in turn told B.S.'s father about B.S.'s situation, and his father immediately told B.S. to leave and stay with a family friend, Sarabjit, in Georgia.  JA391, JA954, JA958.  Only then did defendants return B.S.'s passport and birth certificate.  JA394-396, JA956-960. But Kaur would not return B.S.'s family's property papers and threatened B.S. that she would not "let him leave peacefully."  JA396, JA958.

After traveling to Georgia on May 25, 2021, B.S. told Sarabjit about defendants and, at his urging, B.S. spoke with a lawyer, who sent a letter to defendants on B.S.'s behalf seeking unpaid wages.  JA963, JA974-975.  B.S. also reported defendants to law enforcement in

- 7 -

September 2021, resulting in defendants' arrest in May 2023.  JA431,

JA491, JA976-977.

## B.    Procedural Background

1.  A federal grand jury returned a seven-count indictment against

Kaur and Singh relating to forced labor, harboring an alien, and

bankruptcy fraud.  JA34-55.  As relevant here, the indictment charged

defendants with conspiracy to commit forced labor, in violation of 18

U.S.C. 1594(b) and 1589 (Count 1) (JA36-41); forced labor, in violation

of 18 U.S.C. 1589, 1594(a), and 2 (Count 2) (JA42); harboring an alien

for financial gain, in violation of 8 U.S.C. 1324(a)(1)(A)(iii) and

1324(a)(1)(B)(i), and 18 U.S.C. 2 (Count 3) (JA42-43); document

servitude, in violation of 18 U.S.C. 1592 and 2 (Count 4) (JA43); and

unlawful conduct with respect to immigration documents, in violation of

18 U.S.C. 1597 and 2 (Count 5) (JA43-44).[2]

---

[2] The district court severed the bankruptcy fraud charges (Counts 6 and 7) for trial.  JA12 (docket entry no. 88), JA44-55.  After trial on the forced labor and harboring charges, the court granted the government's motion to dismiss without prejudice the bankruptcy charges.  JA23 (docket entry no. 203).

2.  Before trial, the district court decided two evidentiary matters pertinent to this appeal.

First, the government sought to introduce Kaur's false statements and material omissions on the application to extend B.S.'s tourist visa as evidence intrinsic to the charged offenses or, alternatively, as evidence of knowledge and absence of mistake or accident under Federal Rule of Evidence 404(b).  SA20.  Kaur "concede[d] that this evidence [was] relevant" (SA45), while Singh opposed the motion. JA56-63.  Singh argued that introduction of the application would violate his rights under the Sixth Amendment's Confrontation Clause and that the district court should sever his trial from Kaur's under *Bruton v. United States*, 391 U.S. 123, 137 (1968), because Kaur's statements on the application would directly inculpate him.  JA60-61.

The government countered that there was no Confrontation Clause issue, both because Kaur's statements were not testimonial and because, in any event, they were admissible against Singh as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). SA55 (incorporating SA35-39).  Singh's counsel later "retract[ed]" any reliance on *Bruton* and invoked only *Crawford v. Washington*, 541 U.S.

- 9 -

36 (2004), which bars testimonial statements of a witness who is unavailable for cross-examination.  JA315-316; *see also* JA329 n.1.

The district court ultimately held that Kaur's statements on the visa extension application did not raise Confrontation Clause concerns. JA332.  The court stated that the Sixth Amendment applies only to testimonial statements (JA330 (citing *Crawford*, 541 U.S. at 51)), and "a statement is testimonial when 'a reasonable person in the declarant's position would have expected his statements . . . would be used prosecutorially.'"  JA330 (quoting *United States v. Udeozor*, 515 F.3d 260, 268-269 (4th Cir. 2008)).  Because a reasonable person would not have expected that Kaur's statements on the visa application, including in her affidavit, would "be later used prosecutorially at a trial against Singh," the district court concluded that Kaur's statements were not testimonial and would "not violate Singh's Sixth Amendment Confrontation Clause rights if admitted at trial."  JA332.

The district court further held that the application was intrinsic to the charged offenses and not subject to Rule 404(b)'s limits on admissible evidence.  JA332-336; *see also* Fed. R. Evid. 801(d)(2)(E) (defining as non-hearsay statements made by a co-conspirator during

the course of and in furtherance of a conspiracy). Specifically, the court

found that the application was intrinsic to the "concealment and

harboring of an alien element[s]" under Count 3 (JA336); "knowledge of

obtaining forced labor" under Counts 1 and 2 (JA336); and "possess[ion]

[of] B.S.'s immigration documents in order to coerce and maintain his

labor throughout the conspiracy period" under Counts 4 and 5 (JA336).



Subsequently, when asked if the prior order concerning defendants'
daughter applied to the alleged conduct toward defendants' son, the
court clarified that defendants were precluded from introducing
evidence regarding either alleged incident.  JA109-112.

3.  After an eight-day trial, the jury convicted defendants on all counts (Counts 1 to 5).  JA23 (docket entry nos. 196, 199, and 200). Kaur was sentenced to 87 months' imprisonment, and Singh was sentenced to 135 months' imprisonment.  JA1525, JA1532.

4.  Defendants timely appealed their convictions.  JA1522-1523, JA1538-1539; *see also* JA31 (docket entry no. 268).  This Court has consolidated their appeals.  JA32 (docket entry no. 273).

## SUMMARY OF ARGUMENT

The Court should affirm defendants' convictions.  On appeal, defendants challenge three pre-trial evidentiary rulings by the district court.  Each challenge lacks merit.

1.  The district court's admission of B.S.'s visa extension application, which contained statements by Kaur, did not violate Singh's Confrontation Clause rights under the Sixth Amendment.  The Confrontation Clause applies only to testimonial hearsay.  *See Smith v. Arizona*, 602 U.S. 779, 784 (2024).  Kaur's statements were neither hearsay nor testimonial.  They were not hearsay because the government introduced the application only to show that Kaur made certain statements in it, not to establish their truth.  Kaur's statements

also were not testimonial because a reasonable person in Kaur's place would not have expected her statements to be used at trial against Singh in a later proceeding. *See United States v. Cabrera-Beltran*, 660 F.3d 742, 752 (4th Cir. 2011). Moreover, a co-conspirator's statements made in furtherance of a conspiracy (like Kaur's statements here) are, "by their nature," not testimonial. *United States v. Crawford*, 541 U.S. 36, 56 (2004). In any event, any violation of Singh's Sixth Amendment rights that resulted from admission of the statements was harmless beyond a reasonable doubt.

2. The district court did not abuse its discretion when it denied Singh's motion to sever his trial. Singh failed to carry his burden to show that "clear prejudice" resulted from a joint trial. *See United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012). Accordingly, there is no basis to reverse the district court's denial of Singh's motion and grant a new trial.

3. Finally, the district court did not err, plainly or otherwise, in excluding and limiting cross-examination concerning defendants' allegations that B.S. had assaulted their children. These unproven allegations were not relevant or reliable. Furthermore, introduction of

- 14 -

these allegations would have required the district court to hold a mini trial about the allegations and would have confused the jury and delayed an already long eight-day trial. Even if excluding the evidence was error, the error was harmless beyond a reasonable doubt.

## ARGUMENT

### I.    The district court did not err in admitting statements from the visa extension application that Kaur prepared.

#### A.    Standard of review

This Court applies de novo review to claims of an alleged Confrontation Clause violation. *United States v. Smith*, 117 F.4th 584, 600 (4th Cir. 2024).

#### B.    Singh has no valid Confrontation Clause claim.

Singh challenges, as a violation of the Confrontation Clause, the district court's admission of out-of-court statements that Kaur made on an application to extend B.S.'s tourist visa (Gov't Ex. 11). Br. 12-16; *see also* JA1488-1500. His challenge fails, however, because Kaur's statements were neither hearsay nor testimonial and thus do not implicate the Confrontation Clause.

### 1. The Confrontation Clause applies only to testimonial hearsay.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. This clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). This prohibition "applies only to testimonial hearsay." *Davis v. Washington*, 547 U.S. 813, 823 (2006). As the Supreme Court recently reiterated, that "two-word phrase are two limits" to the Confrontation Clause. *Smith v. Arizona*, 602 U.S. 779, 784 (2024). Because Kaur's statements at issue are neither hearsay nor testimonial, admission of those statements did not violate the Confrontation Clause.

### 2. Kaur's statements were not hearsay.

The Confrontation Clause "bars only the introduction of hearsay," *i.e.*, "out-of-court statements offered 'to prove the truth of the matter asserted.'" *Smith*, 602 U.S. at 785 (quoting *Anderson v. United States*, 417 U.S. 211, 219 (1974)); *accord* Fed. R. Evid. 801(c). The clause "does

not bar the use of testimonial statements for purposes other than establishing the[ir] truth[fulness]." *Crawford*, 541 U.S. at 59 n.9. "When a statement is admitted for a reason unrelated to the truth," the clause's "role in protecting the right of cross-examination is not implicated . . . because the need to test an absent witness ebbs when her truthfulness is not at issue." *Smith*, 602 U.S. at 785 (citation and internal quotation marks omitted); *see also Tennessee v. Street*, 471 U.S. 409, 413-414 (1985) (holding that an accomplice's confession was not hearsay, and the prosecutor's use of the confession "raise[d] no Confrontation Clause concerns," because it was not admitted to prove the truth of his assertion).

Here, Kaur statements on the application to extend B.S.'s visa were not hearsay. The government introduced Kaur's statements not to prove the truth of her assertions, but to show that they were *false* and furthered defendants' criminal objectives. Specifically, the government sought to introduce this evidence to lay the foundation for establishing that the following statements by Kaur on the application were false: (1) that B.S. had not worked in the United States during the relevant time period; (2) that Kaur was B.S.'s interpreter; (3) that Kaur's cell number

- 17 -

and email were B.S.'s contact information; (4) that the reason for the extension request was to allow B.S. additional time to travel and gain knowledge and experiences; and (5) that B.S. wanted more time in the United States to celebrate Christmas (a holiday that B.S. does not observe) with Kaur's family. JA1505-1506, JA1516. In his brief on appeal, Singh acknowledges that the government introduced this evidence both to show that Kaur's statements on the application were "false" and to "establish[] Kaur's *mens rea.*" Br. 10.

Where the government introduces out-of-court statements to prove only that the speaker made them, not to prove the truth of the matter asserted, the statements are not hearsay and are not subject to confrontation clause requirements. *See United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010). In *Ayala*, this Court held that grand jury statements were not hearsay because they were introduced at trial only to prove that those prior statements were made. *Ibid.* The Court acknowledged that the government had used those statements "simply [to] lay[] a foundation" for the conspiracy and showed through other evidence "that the statements were false and made in furtherance of the conspiracy." *Ibid.*; *see also United States v. Holmes*, 406 F.3d 337, 349

- 18 -

(5th Cir. 2005) (holding that out-of-court statements used to establish their falsity through independent evidence to prove an illegal scheme did not implicate the Confrontation Clause); *United States v. Stewart*, 433 F.3d 273, 291 (7th Cir. 2006) (same).

Likewise, the government used Kaur's statements, which were admissible against Singh under Federal Rule of Evidence 801(d)(2)(E) as a co-conspirator's non-hearsay statements made during and in furtherance of a conspiracy, alongside other evidence to show that the statements were false and part of defendants' scheme to maintain B.S.'s continued labor. *See United States v. Wills*, 346 F.3d 476, 489-490 (4th Cir. 2003) (affirming against a Confrontation Clause challenge the introduction of out-of-court statements to provide context to defendant's conspiracy). Notably, Singh does not challenge the district court's Rule 801(d)(2)(E) determination. JA332-336.

For instance, to prove the falsity of Kaur's statement that B.S. did not work, which the district court specifically held was intrinsic to "knowledge of obtaining forced labor" under Counts 1 and 2 (JA336), the government presented testimony by B.S., customers, vendors, and others that B.S. worked at defendants' store. *See, e.g.*, JA671, JA686,

- 19 -

JA697, JA761-794, JA811-814, JA823-828, JA839, JA947; *see also* JA269-270, JA384, JA579-580, JA1138-1139, JA1312, JA1331, JA1335. The government also presented electronic evidence from Lovely Market's surveillance camera and Kaur's cell phone showing B.S. working at the store (JA513-515, JA815-828, JA927-928 (Gov't Ex. 30)), and handwritten daily reports by B.S. documenting delivery and sales information for the store (JA464-465 (Gov't Ex. 19), JA466 (Gov't Ex. 33); *see also* JA780-787).

Because Kaur's statements were not hearsay and did not run afoul of the Confrontation Clause, the district court did not err in admitting them.

### 3. Kaur's statements were not testimonial.

Even if Kaur's statements were hearsay, Singh's Confrontation Clause claim fails because Kaur's statements were not testimonial. *See Crawford*, 541 U.S. at 53-54.

a. A statement is testimonial when "a reasonable person in the declarant's position would have expected [her] statements to be used at trial—that is, whether the declarant would have expected or intended to bear witness against another in a later proceeding." *United States v.*

*Arce*, 49 F.4th 382, 392 (4th Cir. 2022) (quoting *United States v. Benson*, 957 F.3d 218, 228 n.7 (4th Cir. 2020)); *United States v. Jones*, 716 F.3d 851, 856 (4th Cir. 2013) (citing *United States v. Udeozor*, 515 F.3d 260, 268 (4th Cir. 2008)).

The district court correctly applied this standard when it held that Kaur's statements were not testimonial because a reasonable person would not have expected that the statements would "be later used prosecutorially at a trial against Singh." JA322 (citing *Udeozor*, 515 F.3d at 269). Viewing "actions" and "statements" surrounding the extension application objectively, *see Michigan v. Bryant*, 562 U.S. 344, 370 (2011), a reasonable person would not have expected that Kaur's statements would be used to prosecute Singh. Her statements were made to seek an extension of B.S.'s tourist visa so that B.S. could continue working at Lovely Market and thereby further defendants' coercive scheme to profit from B.S.'s labor. Indeed, the statements themselves are not inculpatory and do not implicate Singh.

Furthermore, co-conspirator statements made during and in furtherance of a conspiracy are not testimonial, *Crawford*, 541 U.S. at 56, because they "are, by their nature, made for a purpose other than

use in a prosecution." *Bryant*, 562 U.S. at 362 n.9. In *United States v. Mathis*, this Court held that a co-conspirator's statements about their criminal scheme were "not testimonial in nature" and admission of the statements did not violate the Confrontation Clause because they were made "in furtherance of that criminal conspiracy and were not intended to be used as a substitute for trial testimony." 932 F.3d 242, 255-256 (4th Cir. 2019). For the same reasons, Kaur's statements were not testimonial. They were plainly made to extend B.S.'s tourist visa to obtain B.S.'s labor at defendants' business, not to create a record for trial. Indeed, creating a record for trial would have undermined defendants' criminal purpose.

b. Singh does not contest that a reasonable person in Kaur's position would not have intended the statements to be used in a later trial. Instead, he argues that the district court applied "an overly narrow view of the meaning of testimonial" and that the "solemnity and formality" of Kaur's sworn statements "fall[] within *Crawford's* 'core class' of testimonial documents." Br. 13-14. Singh is wrong.

There is no basis for Singh's proposition that the "solemnity and formality" of a sworn statement alone are sufficient for a statement to

be deemed testimonial for purposes of the Sixth Amendment. Even where the challenged statements are in the form of affidavits, a statement is testimonial only if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (quoting *Crawford*, 541 U.S. at 52)); *see also Jones*, 716 F.3d at 856 (stating that even if a statement is in a form that may be used at trial, that "does not mean that they were 'created for trial'" (quoting *United States v. Cabrera-Beltran*, 660 F.3d 742, 752 (4th Cir. 2011)).

Moreover, this Court has "[i]nterpret[ed] *Crawford*" to "conclude that the 'common nucleus' of the 'core class' of testimonial statements is whether a reasonable person in the declarant's position would have expected his statements to be used at trial . . . against another in a later proceeding." *Cabrera-Beltran*, 660 F.3d at 752 (quoting *Udeozor*, 515 F.3d at 268)); *see also Jones*, 716 F.3d at 856 (stating that the reasonable person test "paraphrased" *Crawford*). Thus, the reasonable person test used in this circuit incorporates the "core class" of

testimonial statements identified in *Crawford*. And that is the test that the district court applied below. JA330, JA332.

Singh implies, however, that the district court imposed an additional "requirement on *Crawford's* definition of testimonial that the declarant expect the statement to be used in a *particular prosecution*." Br. 13 (emphasis added). Not so. The district court correctly described the reasonable person test from *Udeozor*, 515 F.3d at 268-269, and referred to Singh only because it was applying the reasonable test to this case when it stated that "a reasonable person would not have expected these types of statements made in routine . . . visa applications to be later used prosecutorially at a trial against Singh." JA332; *see also* JA330. The court thus correctly applied this Court's reasonable person test and concluded that Kaur's statements were not testimonial statements subject to the Confrontation Clause's requirements.

### 4. Any error in admitting Kaur's statements was harmless.

Even assuming Kaur's statements were testimonial hearsay and the district court erred in admitting them, any error was harmless beyond a reasonable doubt. *See United States v. Reed*, 780 F.3d 260, 269 (4th Cir. 2015) (stating that court will not reverse a conviction

based upon a violation of the Confrontation Clause where it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict" (citation omitted)).

Contrary to Singh's contention (Br. 15-16), Kaur's statements on the application, which primarily demonstrated Kaur's role in the conspiracy and did not mention Singh, were only a small part of the evidence of defendants' coercive scheme. The government presented overwhelming evidence of Singh's role and knowledge in the conspiracy and defendants' use of physical abuse, threats, and coercion to obtain and maintain B.S.'s labor. *See Arce*, 49 F.4th at 394 (holding that error was harmless beyond a reasonable doubt where "overwhelming evidence" established the charges against defendant). This evidence included testimony by B.S. about how Singh, together with Kaur, falsely promised him that they would enroll him in school. JA656, JA683, JA721-724, JA744-745, JA898-900.

The record also contains considerable evidence of defendants' use of threats and physical abuse to force B.S. to continue working at the store. B.S. testified about how Singh hit and kicked him when he asked about attending school, objected to working, or asserted that he wanted

to return to India (JA683-684, JA701-702, JA725); how Singh

threatened to beat B.S. if he did not marry Kaur (JA732); and how

Singh told him that he could kill B.S. and no one would care because of

B.S.'s illegal status and that, if B.S. complained to law enforcement,

B.S. would be in trouble due to his status (JA701-705, JA717-718).

Before B.S. escaped, Singh pointed a gun at B.S. twice: when Singh

discovered that B.S. had told customers not to give him tips because he

was not able to keep them (JA884-885, JA924-932), and again when

B.S. was too sick to work. JA918-920. B.S. was scared that Singh was

going to kill him. JA920-922, JA933. Even after B.S. left defendants,

Singh pulled a gun on B.S. when B.S. asked for his passport. JA957.

Other witnesses corroborated B.S.'s testimony. For example,

B.S.'s father testified that he allowed B.S. to come to the United States

with defendants based on defendants' assurances that they would help

B.S. enroll in a school. JA368, JA370. Also, vendors and customers of

the market testified that B.S. was always working at Lovely Market.

JA515, JA579-580, JA1138-1139, JA1312, JA1331, JA1335.

The government also introduced evidence recovered from search

warrants, including Singh's gun that he used to threaten B.S. (JA488,

JA921-923 (Gov't Ex. 22)); a video from the store's surveillance camera showing Singh brandishing a gun at B.S. over a dispute involving customer tips (JA927-928 (Gov't Ex. 30)); 700 photographs on Singh's phone from the store's surveillance camera showing B.S. at the store from just the last two months before B.S. escaped (JA513); and thousands of electronic messages between B.S. and Singh (as well as chats between B.S., Singh, and Kaur) about B.S.'s duties at the store (JA491-494).

By contrast, the record evidence contradicted Singh's statements in a recorded interview with FBI agents on December 14, 2021. JA1282-1287 (Gov't Exs. 55A, 55B, 55C, 55D, 55E, 55F, and 55G); *see also* SA63-103 (transcript of audio recordings of interview given to jury). In that interview, Singh stated that (1) B.S. did not work at Lovely Market; (2) B.S. stayed at Singh's house when defendants visited India in 2020; and (3) B.S. has never stayed overnight at the market.  SA74, SA85, SA87.  Singh's statements were belied by, *inter alia*, the abundant text messages from Singh to B.S. directing B.S. to do specific chores at the store while defendants were in India (*see, e.g.*, JA844-878), and 1500 handwritten daily reports, many of which B.S. wrote,

recording gasoline deliveries and sales from that time period (JA464-465 (Gov't Ex. 19), JA780-787 (Gov't Ex. 33)).  Indeed, Kaur's brother testified that he regularly picked up money from B.S. at the store to deposit in the bank when defendants were in India.  JA1339-1340, JA1349.  The record also contained text messages between Singh and B.S. telling B.S. that he would need to sleep at the store because Singh could not pick him up to take him home (*see, e.g.*, JA809-830).

Because of the weight of the government's evidence against Singh, compared with the role the visa application played in establishing *Kaur's* role in the criminal conspiracy, any error in admitting the application was harmless beyond a reasonable doubt.

\* \* \*

In sum, Kaur made the challenged statements to further defendants' conspiracy, not to create a record for trial.  The statements also were introduced for context rather than for their truth.  Thus, the statements were not testimonial hearsay and did not implicate the Confrontation Clause.  To the extent any statement on the visa application was testimonial hearsay, any error in admission was

harmless because the evidence of Singh's role in the scheme to obtain

and keep B.S.'s labor was overwhelming.

## II. The district court did not abuse its discretion when it denied Singh's motion to sever his trial.

### A. Standard of review

This Court reviews a district court's denial of a motion to sever for

an abuse of discretion and will not reverse such a denial "absent a

showing of clear prejudice." *United States v. Dinkins*, 691 F.3d 358,

367-368 (4th Cir. 2012); *see also United States v. Reavis*, 48 F.3d 763,

767 (4th Cir. 1995) (stating a denial to sever is an abuse of discretion

only where the decision deprives the defendants of a fair trial and

results in a miscarriage of justice).

### B. Singh failed to show clear prejudice warranting a separate trial.

"There is a preference . . . for joint trials" of defendants who are

charged together for the criminal activities arising out of the same

events. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). This

preference is especially strong in conspiracy cases for reasons of

efficiency and judicial economy. *Dinkins*, 691 F.3d at 368. A court may

sever a joint trial under Federal Rule of Criminal Procedure 14 "[i]f the

joinder of . . . defendants in an indictment . . . appears to prejudice a

- 29 -

defendant or the government." Fed. R. Crim. P. 14. Yet a district court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "[A] defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial." *United States v. Lightly*, 616 F.3d 321, 348 (4th Cir. 2010).

Singh asserts that denial of his motion to sever denied him of a fair trial because he was "unable to challenge the government's interpretation of the [visa extension] application" without being able to cross-examine Kaur "to offer exculpatory explanations for the document." Br. 11.[3] Singh's concerns, however, do not amount to a miscarriage of justice to overcome the preference for joint trials.

---

[3] Singh originally requested severance under *Bruton v. United States*, 391 U.S. 123, 137 (1968), in his response to the government's motion to introduce the visa application. JA60. He later "retracted his *Bruton* objections" and objected only on *Crawford* grounds. JA329 n.1; *see also* JA315-316. Because the district court found no *Crawford* violation, it did not address Singh's severance request in its opinion. JA327-337.

As an initial matter, it is unclear how Singh was prejudiced by the admission of the falsified visa extension application. He was not mentioned in the application, which the government introduced only to establish that Kaur made the statements on the application. *See* pp. 17-20, *supra*. Singh's assertion of prejudice is based on pure speculation and therefore fails because severance is not required where a defendant merely speculates as to potential prejudice resulting from a joint trial. *See Reavis*, 48 F.3d at 767 ("The party moving for severance must establish that actual prejudice would result from a joint trial.").

Nor could Singh show any prejudice. As the district court held, Kaur's statements were non-hearsay statements made by a co-conspirator during and in furtherance of a conspiracy. JA332-336. Singh has not challenged this. Even if Singh had a separate trial, Kaur's statements would have been admissible as a co-conspirator's statements under Federal Rule of Evidence 801(d)(2)(E). As a result, Singh would be hard-pressed to identify any prejudice from admission of the statements here. This is not the kind of situation where prejudice "might occur when evidence that the jury should not consider against a

defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539.

Without more, Singh has not shown any prejudice, let alone carried his burden of demonstrating "clear prejudice." *See Dinkins*, 691 F.3d at 368-369; *see also Zafrio*, 506 U.S. at 538-539 (stating that severance is not mandatory even when prejudice is shown); *United States v. Singh*, 518 F.3d 236, 255 (4th Cir. 2008) (holding that assertion that "evidence concerning their codefendants was unfavorable to them" did not require separate trials); *United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002) (holding that antagonistic defense that inculpated other defendants was not sufficient grounds to require severance). Accordingly, no basis exists to reverse the district court's denial of Singh's request for a separate trial.

## III. The district court did not err in excluding defendants' unsubstantiated and irrelevant allegations of abuse.

### A. Standard of review

This Court reviews the district court's evidentiary rulings for an abuse of discretion and its legal conclusions regarding constitutional claims de novo. *United States v. Landersman*, 886 F.3d 393, 413 (4th Cir. 2018). If a constitutional violation exists, then the question

becomes whether the "error was harmless beyond a reasonable doubt." *United States v. Williams*, 632 F.3d 129, 132 (4th Cir. 2011) (citation omitted). If an error does not rise to the level of a constitutional violation, however, then the evidentiary ruling is harmless if "the judgment was not substantially swayed by the error." *Landersman*, 886 F.3d at 413 (quoting *United States v. Johnson*, 617 F.3d 286, 295 (4th Cir. 2010)).[4]

## B.    Defendants' evidentiary arguments lack merit.

Defendants argue that the district court erred in barring them from raising allegations of B.S.'s assaults on their children and from cross-examining B.S. on these alleged incidents. Br. 9, 16-20; *see* JA1581-1582. In their view, this evidence was admissible under Federal Rule of Evidence 404(b) and its exclusion violated their "Due Process rights to present their defense." Br. 16. Specifically, they claim that they were unable to (1) rebut the government's evidence that B.S.

---

[4] Because Kaur did not object to the government's motion (JA105-112, 1571), her claim is reviewed for plain error. *See United States v. Cabrera-Beltran*, 660 F.3d 742, 751 (4th Cir. 2011). To be entitled to relief, Kaur must establish that there is an "error" that is "plain" and that "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original; citation omitted).

was "was under the defendants' thumbs," and (2) show that B.S. had a "motive to falsely accuse the defendants to obfuscate and avoid the consequences of his own actions." Br. 17. Defendants' challenge fails.

### 1. The district court properly excluded defendants' allegations.

Federal Rule of Evidence 404(b) prohibits admitting evidence of another "crime, wrong, or [other] act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The rule, however, allows the admission of evidence of other acts or crimes if used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

To be admissible, Rule 404(b) evidence must be relevant, necessary, and reliable, and its "probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion." *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017) (citation omitted); *see also* Fed. R. Evid. 403. A defendant may use Rule 404(b) to admit evidence "'for defensive purposes if it tends, alone or with other evidence, to negate

the defendant's guilt of the crime charged against him.'" *United States v. Myers*, 589 F.3d 117, 124 (4th Cir. 2009) (calling this type of evidence "'reverse 404(b)' evidence" (citation omitted)).[5]

Here, the district court correctly excluded defendants' allegations as irrelevant or "marginal[ly]" relevant, "at best," and further concluded that the probative value of the allegations was "substantially outweighed by its prejudicial effect and the confusion and delay that would be engendered by permitting full litigation of the alleged event[s] as described in the briefs." JA1581; *see also* JA112.

---

[5] Although the word "motive" as used in Rule 404(b)(2) "refers to the motive for the commission of the crimes charged" and not to the "witness's motive to testify falsely," *United States v. Farmer*, 923 F.2d 1557, 1567 (11th Cir. 1991) (citation omitted), defendants may use admissible evidence to show bias against the defendants. *See United States v. Abel*, 469 U.S. 45, 52 (1984). The parties disputed below whether defendants' allegations should be analyzed under Rule 404(b) or Federal Rule of Evidence 608(b). JA1575-1577. Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness," but may be used on cross-examination if it is probative of the witness's general credibility. Fed. R. Evid. 608(b). This Court need not resolve this question because the allegations are inadmissible even under defendants' "reverse 404(b)" theory. *See United States v. Taylor*, 417 F.3d 1176, 1179-1180 (11th Cir. 2005) (affirming exclusion of "unfounded 'complaints'" under Rule 404(b) and Rule 608(b) for "similar reasons").

### a.   Defendants' allegations lack probative value.

Defendants' allegations have very little, if any, probative value. Significantly, defendants failed to explain why the alleged assaults were relevant to show bias against defendants. They claim that B.S. had a motive to lie about defendants' coercive scheme because he wanted to avoid the consequences for allegedly assaulting their children. Br. 17. Yet defendants have not articulated in the district court or on appeal a logical "chain of inferences" showing how these allegations of misconduct were relevant to showing B.S.'s bias against the defendants. *Hall*, 858 F.3d at 266 (stating that proponent of evidence must "explain how that evidence 'fits into a chain of inferences'" (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)); *United States v. Caldwell*, 760 F.3d 267, 282 (3d Cir. 2014) (same).

Defendants assert only generally that B.S. was motivated to lie about defendants' treatment of him to cover up for his misconduct. Br. 17. But B.S. revealed defendants' coercive scheme to family and friends in May 2021 and law enforcement in September 2021, *months before*

- 36 -

████████████████████████████████████  JA391-393, JA431,

JA953-955, JA971-977, ████████████████████████████████

████████████████████████████████████████████████

████████████████████

Even though "relevance typically presents a low bar for

admissibility," *United States v. Hart*, 91 F.4th 732, 842 (4th Cir. 2024)

(quoting *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003)),

defendants have not met that bar.  When B.S. initially reported

defendants to family and friends in May 2021 (JA431), he had no reason

to "slant . . . his testimony" against defendants.  *United States v. Abel*,

469 U.S. 45, 52 (1984).  Defendants had not confronted him about any

such allegation ████████████████████████████████████

██████████████████████████

Furthermore, the allegations of both assaults are unreliable. ██

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████



Furthermore, at the time of the incident, Singh exchanged messages with B.S., explaining that he would not be able to pick up B.S. from the store because his son was in the hospital with a broken arm and that B.S. would need to sleep at the store and work the next day.  JA819-820 (text messages, dated Feb. 26, 2021), JA1550.  Thus, B.S. was working at the store when defendants' son broke his arm.

Simply put, defendants sought to inject unfounded allegations against their victim into the trial.

████████████████████████████████████████████████████; *see*

*also* JA396, JA738, JA958. ████████████████████████████

██████████████████████████    Tellingly, Singh previously disavowed

allegations that B.S. physically abused his children.  In his motion in

limine to exclude Kaur's criminal complaint, he expressly argued that

Kaur's allegations that B.S. "tried to hit my son . . . [and] did hit my

daughters a few times" should be excluded to avoid any inference by the

jury that Singh "endorsed" these allegations.  SA59 (citation omitted).[6]

At bottom, unfounded allegations such as the assault allegations would

not have made "a fact more or less probable than it would be without

the evidence," *Hart*, 91 F.4th at 742, and are not admissible under Rule

404(b).  *See Taylor*, 417 F.3d at 1179-1180 (holding that defendant's

unproven allegations were not admissible under Rule 404(b)).

---

[6] The district court granted Singh's motion based on a finding
that Kaur's statements were not relevant to the case and that the
probative value was "substantially outweighed by the risk of prejudice
in the form of jury confusion, delay in the proceedings, and the
litigation of subsidiary issues."  JA15 (docket entry no. 114, at 1).

**b.    Any probative value of defendants'
allegations was substantially outweighed by
the risk of unfair prejudice, confusion, and
undue delay.**

Any probative value of the allegations was "substantially

outweighed by a danger of . . . unfair prejudice, confusing the issues,

misleading the jury, undue delay, [and] wasting time."  Fed. R. Evid.

403; *see also United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986)

(stating that the "last step of Rule 404(b) admissibility is [the] Rule 403

probative-prejudice balancing test").  Rule 403 is "designed to prevent

. . . jury emotionalism or irrationality."  *Ibid.*  █████████████████

███████████████████████████████████████  there was a significant

risk that the jury would draw unauthorized inferences about B.S.'s

character that had nothing to do with his potential bias or whether

defendants committed the charged offenses.  *See United States v. Ham*,

998 F.2d 1247, 1252 (4th Cir. 1993) (emphasizing the inflammatory and

highly prejudicial nature of certain allegations).

Moreover, introduction of these allegations would have caused

undue delay and confused the jury.  ████████████████████████

████████████████████████████████████  and electronic

messages between Singh and B.S.  JA819-820, ██████████ .

- 40 -

██████████████████████████████████████████

████████████████████████████████     To have admitted

these allegations would have required the district court to conduct "an

exhaustive case within a case that would have confused the jury as to

the issues to be decided." *United States v. Hill*, 322 F.3d 301, 306 (4th

Cir. 2003).  At the very least, the district court would have had to

conduct a mini trial where the jury would need to decide whether there

was any truth to the allegations and whether these allegations caused

B.S. to be biased against defendants when he spoke to law enforcement

about their criminal conduct *before* defendants made any allegations

against B.S.  This would have caused undue delay to an already long

eight-day trial. ████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

Accordingly, the district court did not err, plainly or otherwise,

when it determined that the danger of confusion, prejudice, and delay

substantially outweighed the slight, "at best," probative value of

defendants' allegations and excluded the allegations.  JA1581.

- 41 -

### 2. The district court properly limited defendants' cross-examination.

The district court also did not err in refusing to allow cross-examination to show that B.S. was biased against defendants based on defendants' assault allegations. The Sixth Amendment guarantees a defendant the right to cross-examine prosecution witnesses about sources of potential bias, "but it is not without limits." *United States v. Kiza*, 855 F.3d 596, 603-604 (4th Cir. 2017). A defendant does not have the right to cross-examine "in whatever way, and to whatever extent, the defense might wish." *United States v. Ayala*, 601 F.3d 256, 273 (4th Cir. 2010) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). A district court has "wide latitude" in imposing reasonable limits on the cross-examination of a witness, and may impose limits to avoid harassment, prejudice, jury confusion, repetition, or marginal relevance. *United States v. Smith*, 451 F.3d 209, 221 (4th Cir. 2006) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "And while the threshold for determining whether evidence is relevant is comparatively low," this Court "rarely reverse[s] such decisions because they "are fundamentally a matter of trial management." *Kiza*, 855 F.3d at 604 (citation omitted).

The Sixth Amendment was not violated here. Counsel for Singh and Kaur had ample opportunity to cross-examine B.S. as to his truthfulness. Significantly, they elicited from B.S. that he had lied about attending school to his family and his friend Kusha for more than three years and that he lied to his father "each time" he spoke to him. JA987-988, JA997, JA1047. They also cross-examined B.S. about his willingness to attest to false facts on his visa extension application (JA983, JA1011-1012) and to apply for a tourist visa with false information, knowing that the birthdate on his passport was incorrect. JA1022.

Defense counsel also questioned whether B.S. was forced to work. They cross-examined B.S. about how he contacted law enforcement only after defendants failed to respond to B.S.'s letter demanding payment of unpaid wages (JA1000), and how B.S. claimed that he was "mentally stable" when he spoke to an attorney days after arriving in Georgia only to say later he was "not mentally stable" as an excuse to file an untimely claim with the Virginia Victims' Fund. JA1032. Kaur's counsel also questioned whether B.S. simply did not want his father to know that he was working because his father expected B.S. to study and

would have wanted him to return to India if he was not in school. JA997-998.

Similarly, Singh's counsel cross-examined B.S. about why he never researched online how he could locate a new passport or how he could escape his situation—especially when defendants were out of the country. JA1028, JA1035, JA1040. Both defendants presented regular customers at Lovely Market who testified that B.S. appeared "[h]appy" when they saw him in the store. JA1309, JA1325-1326. And defense counsel repeatedly called B.S.'s credibility and character into question in their closing arguments, emphasizing that he "lied repeatedly" and calling him "a liar." JA1457, JA1461.

Because the court properly allowed defendants to investigate B.S.'s motivation during cross-examination without bringing up the assault allegations, and because the jury heard ample testimony exploring B.S.'s credibility, the district court did not err in limiting defendants' cross-examination.

### 3. The overwhelming evidence of defendants' guilt rendered any error harmless.

Even if the district court were incorrect to prohibit defendants from raising and exploring B.S.'s alleged misconduct, any error was

harmless beyond a reasonable doubt. *See United States v. Arce*, 49 F.4th 382, 393 (4th Cir. 2022).[7] An error is harmless beyond a reasonable doubt if "overwhelming evidence" established the charges and "a reasonable fact finder would have found the defendant guilty absent the error." *Id.* at 393-394 (citing *United States v. Moriello*, 980 F.3d 924, 937 (4th Cir. 2020)).

As discussed above, the evidence against Singh was overwhelming. *See* pp. 24-29, *supra*. The same is true for Kaur. In addition to the actions that Singh took to further defendants' coercive scheme, Kaur seized B.S.'s passport from day one (JA664) and falsely told B.S. that defendants would enroll him in school. JA746. Kaur also actively participated in the scheme in multiple ways. For example, she made false statements on B.S.'s visa extension application so that he could stay in the United States (JA686-697) and forced B.S. to marry her by claiming that he would be able to attend school if he were married. JA726-731. And she asked B.S. for his parents' "property papers" in India under the pretense that she needed the documents to

---

[7] Nor can Kaur show that the error affected her substantial rights under plain error review. *See Olano*, 507 U.S. at 732.

enroll him in school.  JA740-747.  She then used those papers and her marriage to B.S. as leverage to ensure that B.S. worked at the store while defendants traveled to India by threatening to report him for spousal abuse and to take his family's assets.  JA745-746.

Although Kaur did not strike B.S., she threatened B.S. just like Singh and was often present when Singh physically assaulted B.S. JA701-702, JA717, JA724-726, JA744, JA918.  For example, Kaur threatened B.S. that if he "went to law enforcement," he would be "the one who will go to jail" because of his unlawful immigration status, while "[n]othing" would "happen to [defendants]."  JA720.  And like Singh, she actively texted B.S. about work he had to do at the store. JA850-878.  Kaur even threatened B.S. on his last day in Virginia that she would not "let [him] leave peacefully."  JA958.  B.S.'s father was on the phone with B.S. at that time and testified that he heard Kaur's threat.  JA396.

Based on the overwhelming testimony and other evidence showing that Singh and Kaur coerced B.S. to work at the store and took steps to ensure his continued labor for their financial gain, defendants' allegations against B.S. would not have shown that defendants did not

commit the crimes. *See Arce*, 49 F.4th at 394. Thus, even if the district court erred in excluding the evidence and limiting cross-examination, the error was harmless beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgments against defendants.

Respectfully submitted,

JESSICA D. ABER
  United States Attorney

AVISHEK PANTH
  Assistant United States Attorney
  United States Attorney's Office
  Eastern District of Virginia
  919 East Main Street, Suite 1900
  Richmond, VA 23219
  (804) 874-0932

KRISTEN CLARKE
  Assistant Attorney General

s/ Teresa Kwong
ERIN H. FLYNN
TERESA KWONG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 514-4757

### STATEMENT REGARDING ORAL ARGUMENT

Although the United States believes that this appeal can be resolved on the briefs, particularly given that defendants' arguments do not raise any complex or novel issues, the United States will appear for oral argument if the Court deems argument would be helpful.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Local Rule 32(b) because it contains 9009 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Teresa Kwong
TERESA KWONG
 Attorney

Date:  December 13, 2024

## CERTIFICATE OF SERVICE

On December 13, 2024, I filed this brief with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users. Service of the redacted copy of this brief will be accomplished by the CM/ECF system. With written authorization by appellants' counsel, the sealed unredacted copy of this brief was served by electronic mail on:

Jonathan Sheldon
Sheldon & Flood, P.L.C.
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
jsheldon@sfhdefense.com

Meghan Skelton
Skeltonlaw, LLC
P.O. Box 308
Cabin John, MD  20818
meghan@skelton.law

s/ Teresa Kwong
TERESA KWONG
 Attorney